Tomas **DE JESUS MANGUAL**,
Plaintiff,

v.

Jose **FUENTES AGOSTINI**,
et al., **Defendant(s)**.

**CIVIL NO. 99–2049 (JAG).**

United States District Court,
D. Puerto Rico.

March 28, 2002.

Juan R. Marchand–Quintero, San Juan, PR, for Plaintiffs.

Marie L. Cortes-Cortes, Dept. of Justice of PR, Fed. Lit. Div., San Juan, PR, Luis F. Del–Valle–Emmanuelli, Garcia & Fernandez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

Tomás de Jesús Mangual ("Mangual"), as plaintiff, and Obed Betancourt ("Betancourt"), Manny Suarez ("Suarez"), The Overseas Press Club ("OPC"), Jorge Medina ("Medina"), and Caribbean International News Corporation ("El Vocero") as interveners[2], brought suit against the Secretary of Justice of the Commonwealth of Puerto Rico, the Honorable José Fuentes Agostini ("the Secretary")[3] challenging the constitutionality of the Puerto Rico libel statutes, Articles 118–121 of the Puerto Rico Penal Code, 33 L.P.R.A. § 4101–4104. Jurisdiction is premised on the general federal question, and civil rights jurisdictional grants, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3), respectively. Relief is sought under The Civil Rights Act, 42 U.S.C. § 1983[4] to prevent a deprivation of First, Fifth and Fourteenth Amendment rights as well as under the Declaratory Judgment Act, 28 U.S.C. § 2201[5], and Rule 57 of the Federal Rules of Civil Procedure. The Secretary filed a motion to dismiss for lack of subject matter jurisdiction on grounds of standing, ripeness and mootness. Having reviewed the record, briefs, and after oral argument, the Court grants the motion and holds that plaintiff as well as interveners lack standing to sue, and the claims are unripe and moot.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Mangual is a full time journalist for El Vocero de Puerto Rico, a newspaper published by Caribbean International News Corp., a Puerto Rico corporation with principal offices in San Juan. (Docket 1, Veri-

---

1. Britt E. Arrieta, a student at University of Puerto Rico Law School, assisted in the research and preparation of this opinion.

2. Mangual is the original plaintiff. Betancourt, Suarez, OPC, Medina and El Vocero later moved to intervene as plaintiffs.

3. Mr. Fuentes Agostini resigned his position during the pendency of this action. In November, 2000 general elections were held in Puerto Rico and the Honorable Sila Calderón was elected governor. In January 2001, she appointed the Honorable Anabelle Rodríguez as Secretary of Justice. Pursuant to Fed. R.Civ.P. 25(d)(1), Mrs. Rodríguez has been automatically substituted for Mr. Agostini in this suit. We shall continue to refer to the "Secretary" throughout this opinion.

4. "Every person who, under color of any state, ..., of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ..."

5. "In case of actual controversy within its jurisdiction, ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, ..."

fied Complaint, p. 2). In March 1999, Mangual investigated a criminal libel complaint pursued by State Police Officer Elsa Rivera Colón ("Officer Rivera") against El Vocero reporter, Betancourt, based on a news story published by Betancourt. Mangual published four articles on the subject on March 1999 (the "March, 1999 articles"). (Docket 1, at 4). These articles state that the criminal charges against Betancourt were part of a conspiracy by Officer Rivera and other corrupt police officers to silence Betancourt. The articles linked Officer Rivera to drug traffickers and accused her of having a child out of wedlock with supervisor Commander Jovito Miró. (*Id.*) On April 12, 1999 Officer Rivera wrote a letter to the Secretary in relation to these articles and stated that they were defamatory and that she was going to file criminal charges against Mangual. (*Id.* at 5). Mangual was never summoned or otherwise informed of any criminal charges or proceedings against him. (*Id.* at 5)

Mangual then brought the present civil rights action against the Secretary, seeking a declaration that Puerto Rico's Libel Statutes are facially unconstitutional under the First Amendment. In support of his claims, he filed a motion for summary judgment. (Docket 2, Motion for Summary Judgment and Memorandum of Law in its Support).

On May 10, 2000, the OPC, a non-profit association of journalists, media people and publicists; Suarez, a reporter for the San Juan Star and member of the OPC; and Betancourt, also member of the OPC and reporter from El Vocero de Puerto Rico, requested intervention as plaintiffs in the case. (Docket 17, Applicant's Motion to Intervene as Plaintiffs and for time to present Complaint and Memorandum of

Law). Pursuant to Court order, (Docket 24), by District Judge Daniel R. Domínguez [6], interveners filed an *amicus curiae* brief arguing that the Puerto Rico criminal libel statute chills their enjoyment of First Amendment rights and asked the Court to declare the statute unconstitutional. (Docket 25, Applicants for Intervention as Plaintiffs Brief as *Amicus Curiae* ). On October 31, 2000, Medina, a journalist for El Vocero de Puerto Rico, and El Vocero filed an urgent motion requesting intervention. (Docket 30, Urgent Application to Intervene as Plaintiff Pursuant to F.R.C.P. 24(b) and Urgent Request for Injunctive Relief.) They alleged that the public expressions of then candidate for Governor Sila María Calderón's campaign director Irving Faccio, constituted a prosecutorial threat in retaliation for Medina's and El Vocero's publication of an article regarding Mrs. Calderón's mistreatment of her Dominican housekeeper. The article described how the housekeeper had witnessed Mrs. Calderón's xenophobic behavior. (*Id.* at 1, 3–4). Medina and El Vocero raised the same claims as Mangual and asked to be heard on the matter which was set for oral argument on November 2, 2000.

At the November 2nd oral argument, Medina and El Vocero were allowed to intervene and argue. The Court heard argument on the issues of mootness and standing. The Secretary argued that Mangual's and Betancourt's case were moot and that plaintiff's and interveners' claims should be dismissed on grounds of standing. (Docket 31, Minutes of Proceedings). The Court raised possible certification of pending issues to the Puerto Rico Supreme Court, but at the hearing and in subsequent briefs the parties agreed that

---

**6.** This case was originally assigned to Judge Daniel R. Domínguez and transferred to the undersigned Judge's docket effective August 1, 2000.

certification should not be pursued. (Docket 34 at 9–11).

In a post argument motion filed on July 11, 2001 (Docket 44), in response to a motion filed by plaintiffs and interveners on June 12, 2001 (Docket 42) the actual Secretary (Mrs. Rodríguez) represented to the Court in no uncertain terms that "... the Commonwealth of Puerto Rico does not foster the filing of criminal charges by or against any of its citizens, *especially journalists*." (Undersigned ours.) (Docket 44 at 5).[7]

### DISCUSSION

**I. *Justiciability of plaintiff Mangual's claims.***

**a. Standing**

Mangual contends that Officer Rivera's threat of criminal prosecution stifles his freedom of speech and press and that Puerto Rico's criminal libel statute exerts a chilling effect on journalists because it is vague and confusing. (Docket 1, at 6,8.) Mangual also asserts that he remains under credible threat of prosecution by the Secretary who is the ranking officer of the Department of Justice, with supervisory power over district attorneys in the Commonwealth. (Docket 20, Opposition to Motion to Dismiss, pp. 15–16). The Secretary challenges the subject-matter jurisdiction of this Court based on Mangual's lack of standing, unripeness of his claims and unjusticiability of the case under Article III.[8]

Article III of the Constitution, directs federal courts to decide only "cases and controversies". *Diamond v. Charles,* 476 U.S. 54, 61, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986); *Santiago Collazo v. Franqui Acosta,* 721 F.Supp. 385, 388 (D.P.R.1989). The doctrine of standing rooted in this "case and controversy requirement" focuses on the party seeking federal court intervention and not on the issues that he or she asserts. *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). *See also Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). To have standing a plaintiff must "show that: (1) he or she personally has suffered some actual or threatened injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury will be redressed by a favorable decision from the court". *New Hampshire Right to Life Political Action Committee v. Gardner,* 99 F.3d 8, 13 (1st Cir.1996). *See Northeastern Fla. Chapter of Assoc. Gen. Contractors of America v. Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Vote Choice, Inc. v. DiStefano,* 4 F.3d 26, 36 (1st Cir. 1993).

In addition to Article III's constraints, a plaintiff's case or controversy must also satisfy the prudential considerations underlying the standing doctrine.

---

**7.** The actual Secretary went a step beyond and stated that the First Amendment protects journalists in the exercise of their rights and that the courts of Puerto Rico would follow applicable precedent from the Supreme Court of the United States. She requested the Court to take notice of her statements and "... deny plaintiff's petition to order defendant to admit that the criminal libel statute is in the midst of an officially fostered resurgence." (*Id.*)

**8.** The Secretary also invokes the abstention doctrine of *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) to allow Puerto Rico courts to construe the challenged statutes. (Docket 10, Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction, pp. 5 22). We do not reach the Secretary's abstention arguments in view of our decision on the standing, ripeness and mootness issues.

First, a plaintiff must assert his or her own legal rights and not the legal rights of third parties. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)(*quoting Warth,* 422 U.S. at 499, 95 S.Ct. 2197); *Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 217–28, 94 S.Ct. 2925, 41 L.Ed.2d 706, (1974). Second, the Court must refrain from adjudicating "abstract questions of wide public significance". *Warth,* 422 U.S. at 499–500, 95 S.Ct. 2197; *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Third, the plaintiff's complaint must fall within "the zone of interest to be protected or regulated by the statute or constitutional guarantee in question". *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). *See also Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586; *Lujan,* 504 U.S. at 559, 112 S.Ct. 2130; *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *El Día,* 30 F.Supp.2d at 167. The party who invokes federal jurisdiction has the "[t]he burden of establishing [that] standing" exists. *Rhode Island Association of Realtors, Inc. v. Whitehouse,* 199 F.3d 26, 30 (1st Cir.1999). *See Bennett v. Spear,* 520 U.S. 154, 167–68, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *Warth,* 422 U.S. at 508, 95 S.Ct. 2197.

Mangual meets the "causation" and the "redressability" requirements of the standing test to the extent that: (a) the alleged injury "can be traced to the threatened enforcement of the challenged statutes", and (b) "when a plaintiff seeks a declaration that a particular statute is unconstitutional, the proper defendants are the government officials charged with administering and enforcing it". *New Hampshire,* 99 F.3d at 13. *Diamond,* 476 U.S. at 57 n. 2, 106 S.Ct. 1697; *Kentucky*

*v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). In order "to establish the conflict needed to animate this principle", however, Mangual needs to show that his fear of prosecution is not imaginary or wholly speculative. *New Hampshire,* 99 F.3d at 14 (*citing Babbitt v. United Farm Workers Nat'l Union,* 422 U.S. 289, 298, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975)). Here, Mangual has not proffered evidence that shows that he was or is under fear of prosecution. Assuming, however, that these two requirements have been met ("causation" and "redressability"), Mangual would still have to satisfy the "injury in fact" requirement.

The "injury in fact" requirement is essential to determine whether the party invoking the federal court's authority is the proper party to do so. *Flast,* 392 U.S. at 102, 88 S.Ct. 1942; *Linda,* 410 U.S. at 618, 93 S.Ct. 1146. The Supreme Court delineated the query as follows:

> In a pre-enforcement challenge to a statute carrying criminal penalties, standing exists when the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest but proscribed by the statute, and there exists a credible threat of prosecution.

*Babbitt,* 442 U.S. at 298, 99 S.Ct. 2301(emphasis ours); *see New Hampshire,* 99 F.3d at 14. The First Circuit held in *New Hampshire* that if the case is a pre-enforcement challenge to a criminal statute for abridgement of First Amendment rights, two questions with respect to the injuries to be suffered must be asked. *Id.* 99 F.3d at 13. First, whether the threat of enforcement or credible threat of prosecution is an injury sufficient to confer standing; and, second, whether the chilling effect on plaintiffs' First Amendment Rights is a result of the threat of prosecution. *New Hampshire,* 99 F.3d at 13. *See*

*Meese v. Keene,* 481 U.S. 465, 473, 107 S.Ct. 1862, 95 L.Ed.2d 415 (1987); *Doe v. Bolton,* 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). Unless the fear of prosecution is objectively reasonable, it does not constitute a standing-conferring injury. *New Hampshire,* 99 F.3d at 14. *See Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). The common denominator for both injuries is the credible threat of prosecution. *New Hampshire,* 99 F.3d at 13.

■ Mangual has manifested his intention to work as a journalist. This does not mean, however, that he will engage in the libelous conduct proscribed by the statute. The possibility that he might commit libel is simply too remote or hypothetical to give rise to an imminent injury satisfying the standing requirements. *See e.g. City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). If the Court however assumes that in the course of his journalistic activities he could engage in libelous conduct, the first and second prong of the *Babbitt* test could be met. The question turns then on the third requirement: the existence of a credible threat of prosecution.

■ No charges have been filed against Mangual nor has he been summoned or otherwise informed of any criminal proceedings against him. The Secretary has not stated at any time that she will prosecute Mangual nor has she engaged in any action that could lead to this conclusion. Mangual has not offered any evidence showing how the Secretary is threatening him with prosecution. The only threat Mangual has proven is the one from Officer Rivera who is not a party to this action. The Secretary replied to Officer Rivera's letter[9] informing her that be-cause the crime of libel under Article 118 was a misdemeanor, the Department of Justice could only intervene only if probable cause were found and the case set for trial. (Docket 12, Exhibit A) The Secretary also stated that in misdemeanor crimes, it is the police who investigate, gather evidence and determine whether to file charges or not. The Secretary's role, therefore, in any prosecution under the challenged libel statutes, depends on the actions of third parties not before the court. Article III requires federal courts to "act only to redress injury that can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court". *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

After oral argument, Mangual filed a motion requesting that the Court take judicial notice of the occurrence of two criminal libel cases as evidence of the chilling effect on journalists triggered by the Department of Justice's actions in connection with the statute. (Docket 42, Motion Requesting Judicial Notice and Issuance of Order, pp. 2–3.) The Secretary did not object to the request for judicial notice but did clarify that neither case was against a journalist. (Docket 44, Motion in Response to Plaintiff's "Motion Requesting Judicial Notice and for Issuance of Order", pp. 2–4). As the Department of Justice indicated, it did not file charges against any journalist and the role the press had in one of the cases was as a witness. (*Id.* at 4.) These cases, therefore, do not involve journalists exercising their First Amendment Rights. (*Id.* at 5.) Furthermore, the Secretary announced a policy of

---

9. The letter was sent by Edwin O. Vázquez, Auxiliary Secretary of the Department of Justice.

the Commonwealth of Puerto Rico of not filing criminal libel charges against journalists. (*Id.*)[10] In sum, Mangual has not proffered evidence to support his argument that he or any other journalist is under credible threat of prosecution by the Secretary.

In *Rhode Island Association of Realtors v. Whitehouse*, 199 F.3d 26 (1st Cir.1999), the First Circuit held, as in *New Hampshire*, that in pre-enforcement challenges to statutes alleged to infringe First Amendment rights, standing exists when there is an objectively reasonable credible threat of prosecution.

The Rhode Island Association of Realtors challenged the constitutionality of a Rhode Island statute, which prohibited the use of public records for commercial solicitation, as infringing upon its First Amendment rights. The Association wanted to use the information to recruit new members but refrained from doing so for fear of prosecution. The First Circuit held that the Association had standing, its claim was ripe, and was not moot. The Court reaffirmed that in "pre-enforcement challenges to recently enacted (or a least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, the court will assume a credible threat of prosecution in the absence of compelling contrary evidence". *Id.* at 31 *quoting New Hampshire*, 99 F.3d at 14–15. The direct admonition to the Association of Realtors of the criminal penalties for infringing the statute, and the Attorney General's silence regarding how the statute should be interpreted, adequately proved an objectively reasonable threat of prosecution. The key requisite for standing and ripeness, therefore, was

the existence of this credible threat, which the Association undeniably satisfied.

As in *New Hampshire* and *Rhode Island*, the inquiry here centers on whether Mangual is under a credible threat of prosecution. In *Rhode Island*, the Court considered as factors, which could indicate the existence of a credible threat: (1) that the statute was regulatory in nature; (2) that it prohibited precisely the conduct that the plaintiff wished to undertake; and, (3) that it set severe sanctions for noncompliance. 199 F.3d at 31.

Contrary to the statute in *Rhode Island*, however, the Puerto Rico libel statute does not prohibit the conduct Mangual intends to engage in. In *Rhode Island* the Association sought to use the public records to recruit new members, a commercial activity, which was expressly and specifically prohibited by the statute. Mangual claims he intends to practice journalism, but the statute he challenges only prohibits libel. Mangual does not claim he intends to engage in the criminal conduct of libel. Credible threat cannot be reasonably based on the possibility that in the future, Mangual might commit libel and, in that event, charges might be brought against him. The leniency granted in First Amendment cases to standing considerations does not mean that the court can ignore the well-established principle that the plaintiff must show he has suffered or will inevitably suffer an injury because of the statute's enforcement. *Ex Parte Levitt*, 302 U.S. at 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937); *Laird*, 408 U.S. at 13, 92 S.Ct. 2318; *Linda*, 410 U.S. at 618, 93 S.Ct. 1146.

Citing no cases to support his argument, Mangual relies on Professor Tribe to contend that, in anticipatory constitutional

---

**10.** We have referred to Mangual's motion and the actual Secretary's response in the Procedural History part of this opinion. Supra at

6. In view of these motions and others filed after oral argument, the case was finally submitted for a final decision in July 2001.

challenges to criminal statutes, "the challenge is justiciable when the plaintiff demonstrates either threat of enforcement or 'the existence of a non-moribund prohibition which applies particularly and unambiguously to activities in which the plaintiff regularly engaged or sought to engage'." Tribe, *American Constitutional Law, Foundation Press*, 2d ed. p. 75.[11] The threat of enforcement Professor Tribe speaks of, however, must be "directed personally to the plaintiff in the case of a statute whose applicability to plaintiff's intended acts might seem unclear". *Id.* The statute challenged here does not prohibit Mangual's intended activity and Mangual has not proffered evidence of specific conduct by the Secretary directed against him, as if he were the possible target of a prosecution. Mangual's reliance on Tribe's Treatise is, therefore, misplaced.

**b. *Ripeness***

▇▇▇ Mangual contends that the absence of an ongoing prosecution does not make his claim unripe under First Amendment principles. (Docket 12, at 2, 9–16.) He asserts that the only way he would feel certain that he will not be prosecuted, is to cease being a journalist. The declaratory judgment he seeks would certainly dispel the threat of prosecution by Department of Justice officials. (Docket 20, Opposition to Motion to Dismiss; Request Adjudication or Setting of Oral Hearing, pp. 15–16.) Ripeness requires that the court evaluate the "fitness of the issue" and the "hardship of withholding ... judicial consideration". *Rhode Island*, 199 F.3d at 33. Fitness involves "uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all." *Massachusetts Association of Afro–American Police,*

*Inc., v. Boston Police Dept.*, 973 F.2d 18, 20 (1st Cir.1992). *See Rhode Island,* 199 F.3d at 33; *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 535–36 (1st Cir.1995). Hardship refers to "whether the challenged action creates a direct and immediate dilemma for the parties". *Abbott Laboratories v. Gardner,* 387 U.S. 136, 152–53, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). *See Rhode Island,* 199 F.3d at 33; *Ernst & Young,* 45 F.3d at 535–36. In pre-enforcement challenges, standing and ripeness overlap because both depend on the existence of a credible threat of prosecution. *Rhode Island,* 199 F.3d at 33. Furthermore, "in a pre-enforcement context the party must have concrete plans to engage immediately (or nearly so) in an arguably proscribed activity". *Id.* In *Rhode Island,* the Association faced a "direct and immediate dilemma" because it had "refrained from carrying out its plan for fear of prosecution" and its members had been admonished that they would be prosecuted in the event they did. *Id.* at 34.

▇▇▇ As discussed earlier, Mangual has not described a concrete plan to engage in libel. Additionally, the Secretary has not admonished Mangual about possible criminal charges or consequences if he practices journalism. Mangual is under no immediate or direct dilemma of facing a prosecution. Any possible or potential threats or fears of prosecution are too indefinite, improbable, and speculative to consider the case ripe for decision.

▇▇▇ Mangual, however, further contends that the occurrence of the two recent criminal libel cases demonstrate the Department of Justice' intention to enforce the statute, making his case ripe. (Docket

---

11. Docket 20, Opposition to Motion to Dismiss; Request for Adjudication or Setting of Oral Hearing, p. 10

42 at 2). He refers specifically to a "Sur-reply" filed by the Secretary that stated that the question of the constitutional validity of the statute would only arise if the statute were to be construed as not incorporating the principles of *Garrison v. Louisiana*, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). (*Id.* at 1). (*See* Docket 39 at 6). Since there was no specific citation to *Garrison* in the two libel cases, Mangual alleges his case is ripe. (Docket 42 at 1). The actual Secretary, however, clarified in her latest submission that this statement in the "Sur-reply" merely referred to an argument made by Mangual alleging that journalists in Puerto Rico were not equally protected under the First Amendment as were all journalists in the states. (Docket 44 at 2) (*See* Docket 39 at 5). She unambiguously asserted, moreover, that the Commonwealth of Puerto Rico fully recognizes a journalist's First Amendment rights, and that this recognition should prevail inasmuch as "the courts of the Commonwealth of Puerto Rico as well as courts of other States must follow and abide the requirements of *Garrison v. Lousiana.*" (Docket 44 at 5). Furthermore, the two cases Mangual refers to do not involve journalists exercising their First Amendment rights. (Docket 44 at 2–5). Thus, any fears journalists might have of not being protected cannot be based on these two cases. Additionally, since neither Mangual or interveners have been prosecuted, the uncertainty or remote possibility that they could be prosecuted in the future renders this case unripe for a decision on the merits.

In sum, Mangual has not presented a shred of evidence to support his contention that he or any journalist is under credible threat of prosecution by the Secretary. Being unripe, his claims must be dismissed.

### c. *Mootness*

█ The Secretary requests dismissal on grounds of mootness because under the Puerto Rico Penal Code, 33 L.P.R.A. § 4101, criminal libel actions must be brought within one year of the criminal act, 33 L.P.R.A § 3412 [12], thus any potential complaints by Officer Rivera, regarding the "March, 1999 articles", are time barred.

█ Mootness is the "requisite personal interest that must exist at the commencement of the litigation (standing), and must continue throughout its existence (mootness)". *Id.* at 68 n. 22, 85 S.Ct. 209 (*quoting Unites States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), *quoting* Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). As opposed to standing and ripeness, mootness focuses on the "ongoing events". To avoid purely advisory opinions, under Article III, a federal court "must depart the field if the controversy later abates". *Rhode Island*, 199 F.3d at 34.

In *Rhode Island* the Court found that the Attorney General's argument of inapplicability of the statute to the Association's activity, was not enough to render the claims of its members moot.[13] Here,

---

12. "Criminal actions shall prescribe: ...(b) One year in misdemeanor cases, except those proceeding from violations of revenue laws and section 4365 of this title on Failure to Comply with Duty and 4366 on Negligence in Complying with Duty which shall prescribe after four years."

13. Since the statute challenged in *Rhode Island* was not susceptible of a narrowing construction and the Attorney General did not suggest one, the case was found to be justiciable. In a pre-enforcement challenge, federal courts can presume a "fairly susceptible" "narrowing construction" even if the state

the Secretary claims mootness on the ground that Officer Rivera is prevented from filing charges against Mangual, and so the Court lacks jurisdiction. The Court agrees with the Secretary. As the Court stated in *Rhode Island,* the controversy " 'must be extant at all stages of review, not merely at the time the complaint is filed'." *Id.* at 34 (*quoting Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)).

In *Arizonans for Official English v. Arizona,* 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), the Supreme Court held that when a state officer leaves his state job there is no longer a "vital claim for prospective relief". *Id.* at 67, 117 S.Ct. 1055. As in *Arizonans,* Mangual's case became moot when Officer Rivera's cause of action against him abated during the pendency of this case. In *Arizonans,* plaintiff argued that since her original complaint was not moot when it was filed, the District Court's judgment should not be upset. *Id.* at 72, 117 S.Ct. 1055. The Supreme Court rejected this argument holding that, even if the case is pending appellate review, if it becomes moot, then the court should "vacate the judgment below and remand it with a direction to dismiss." *Id.* at 71, 117 S.Ct. 1055. The live nature of the claims is of such importance, that the Courts must dismiss even if the mooting event occurs at the appellate stage. Here, the Court is precluded from entering judgment on the merits when the basis of Mangual's claim has disappeared.

In *Arizonans,* the case was mooted by plaintiffs's conduct as opposed to Mangual's claim which has been mooted due to the inaction of a third party. This, however, does not alter the Court's conclusion. The charges Officer Rivera could have brought, which are now extinct, are Mangual's only basis for claiming fear of prosecution. There is no evidence to show that Mangual's claim is still alive. Additionally, Mangual has failed to show how the Secretary has or is causing him or other reporters fear of possible prosecution. Thus, even if the Court were to determine that Mangual has standing, which he does not, this action is now moot and should be dismissed.

## II. Standing of interveners Obed Betancourt, Manny Suarez, Jorge Medina & Caribbean International News Corporation ("El Vocero").

 If the court were to grant the requesting parties' intervention, they would too lack standing to sue. The *Arizonans* Court pointed out: "an intervenor cannot step into the shoes of the original party unless the intervenor independently 'fulfills the requirement of Article III'." *Id.* at 65, 117 S.Ct. 1055 (*quoting Diamond,* 476 U.S. at 68, 106 S.Ct. 1697). Betancourt's criminal libel case was dismissed for lack of probable cause[14] and he has not provided evidence of threats or actions by

officials fail to offer an "authoritative interpretation of the state statute". *Id.* at 36. In the present case, the Secretary has presented the Court with such an interpretation of the state statute. *See* Docket Number 10, Memorandum of Law in Opposition to Mangual's Motion for summary Judgment and in Support to Defendant's Motion to Dismiss for Lack of Jurisdiction, pp.5–10; Docket 19, Reply to Mangual's "Opposition to Motion to Dismiss; Reply and Request for Adjudication", pp. 7–9; Docket 22, Reply to Mangual's

"Opposition to Motion to Dismiss; Requesting got Adjudication or Setting of Oral Hearing", pp. 4, 6; Docket 27, Opposition to "Applicants for Intervention as Plaintiffs Brief as *Amicus Curiae* ", pp. 6–7; Docket 39, Surreply to Mangual's and Applicants for Intervention's "Reply to Defendant's Opposition", pp. 2–4, 6, 9.

**14.** Docket 3, Motion for Order to Show Cause and Expedited Resolution p. 1

other persons that might lead to his prosecution. Also, previously, Betancourt had filed in this District Court a claim identical to the one at bar, and the Court dismissed the case for lack of jurisdiction on grounds of mootness. *See El Vocero de Puerto Rico v. José Fuentes Agostini,* Civil No. 99–1272 (D.P.R. Sept. 15, 1999)(Perez–Giménez, J.)(unpublished). The Court cannot revive what this very same court has already pronounced dead.

■ Likewise, Suarez's presents no evidence to support his "chilling effect" allegations. He has not explained how the Secretary or any other person has caused him to fear prosecution. As with Mangual and Betancourt, the possibility that Suarez might commit libel, and then be charged, is simply too hypothetical to be considered imminent injury for standing purposes.

Similarly, El Vocero's and Medina's allegations of injury, for expressions[15] they considered to be a threat, are not sufficient to grant them standing because the parties' "subjective fear that [they] may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable". *New Hampshire,* 99 F.3d at 14. *See Laird,* 408 U.S. at 13–14, 92 S.Ct. 2318. *But see Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 392–93, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988). Absent evidence to support their fear of prosecution, El Vocero and Medina have failed to meet the injury-in-fact requirement. Furthermore, El Vocero and Medina have not shown if and how the Secretary's actions have caused or will cause Medina and other El Vocero's journalists to reasonably fear

prosecution. Therefore, they too lack standing.

In sum, the interveners also fail to meet the standing requirement of "injury in fact" for lack of proof of a credible threat.

### III. *Standing of the OPC as an Association*

The Supreme Court has recognized that an association may have standing to sue on behalf of its members "when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit". *Hunt v. Washington Apple Advertising Comm.,* 432 U.S. 333, 343–44, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). *See Food and Commercial Workers v. Brown Group, Inc.,* 517 U.S. 544, 546, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996). The association must meet the standing requirements of "injury in fact", "causation", and "redressability". *Rhode Island,* 199 F.3d at 30. *See Valley Forge,* 454 U.S. at 472, 102 S.Ct. 752; *Vote Choice,* 4 F.3d at 36. To have standing an association "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. *Warth,* 422 U.S. at 511, 95 S.Ct. 2197." *Hunt,* 432 U.S. at 343–44, 97 S.Ct. 2434. *See also Arizonans,* 520 U.S. at 66, 117 S.Ct. 1055; *Simon,* 426 U.S. at 39–40, 96 S.Ct. 1917; *Sierra Club,* 405 U.S. at 739, 92 S.Ct. 1361. Additionally, "the nature of the claim and

---

**15.** In prepared public statements, Irving Faccio, as campaign director for then Governor candidate, Sila M. Calderon, expressed that Medina's news articles were intentionally defamatory, and that criminal libel is a serious crime punishable with incarceration. (Docket 30, Urgent Application to Intervene as Plaintiff Pursuant to F.R.C.P. 24(b) and Urgent Request for Injunctive Relief. p. 4–6).

of the relief sought [should] not make the individual participation of each injured party indispensable to proper resolution of the cause." *Hunt*, 432 U.S. at 343–44, 97 S.Ct. 2434. Furthermore, the remedy pursued by the association should "inure to the benefit of those members of the association actually injured." *Warth*, 422 U.S. at 515, 95 S.Ct. 2197.

 The OPC seeks invalidation of the statute insofar as it encroaches upon Mangual's, interveners' and the press' First Amendment rights. (Docket 25, Applicants for Intervention as Plaintiffs, Brief as *Amicus Curiae* pp. 10–24). However, the OPC fails to meet the first prong of the associational standing test because its members do not have standing to sue on their right. The OPC has not provided evidence to support the existence of the alleged injuries its members might be suffering. Although the OPC seeks to protect the practice of journalism, which is inherent to the nature of the organization (second prong), that interest "cannot 'substitute ... the concrete injury required by Art. III.' " *Hunt*, 432 U.S. at 343, 97 S.Ct. 2434 (*quoting Simon*, 426 U.S. at 40, 96 S.Ct. 1917). Nonetheless, the Supreme Court has "recognized that an association may have standing to assert the claims of its members even where it has suffered no injury from the challenged activity." *Hunt*, 432 U.S. at 342, 97 S.Ct. 2434 (internal citations omitted). Even so, the OPC lacks associational standing for it has not shown how it has been injured as a result of the Secretary's or any other person's actions. In sum, the OPC does not have associational standing.

## IV. Standing to assert the rights of third parties

 The Supreme Court has recognized standing to third parties when the party injured is prevented from asserting "on behalf of itself" his or her rights. *Secretary of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Moreover, in First Amendment challenges of statutes that may chill speech, the rules of third party standing are relaxed. *Id.* As this Court explained in *El Dia*, litigants may "challenge a statute not because their own rights of free expression are violated but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression". *Id.*, 30 F.Supp. at 170 (internal citations omitted). If the statute is alleged to be overbroad, the Court allows "a party to assert the rights of another without regard to the ability of the other to assert his own claims and 'with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity' ". *Secretary of Maryland* 467 U.S. at 957, 104 S.Ct. 2839 (*quoting Broadrick*, 413 U.S. at 612, 93 S.Ct. 2908, *quoting Dombrowski*, 380 U.S. at 486, 85 S.Ct. 1116). To determine if a third party has standing the court must examine: (1) the relationship between the plaintiff and the third party; (2) "whether the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue;" (3) "if the litigant is an effective proponent of the right as the third party"; and, (4) the "risk that the rights of the third party will be diluted if standing is not allowed." *Singleton v. Wulff*, 428 U.S. 106, 114–116, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *El Día*, 30 F.Supp.2d at 170.

In *Munson*, the Court found that a third-party had standing to sue because he was suffering an injury and he properly framed the issues in the case to rightfully represent those not before the court. The

absence of reasons why the third party charities could not bring suit in that case, did not dispose of the standing issue because in challenges to statutes that allegedly chill speech, the Court has allowed third party standing. *Id.* at 957, 104 S.Ct. 2839. The "crucial issues" were if the plaintiff satisfied the "injury-in-fact" requirement and whether it could be expected that he would "satisfactorily ... frame the issues in the case." *Id.* at 958, 104 S.Ct. 2839. Since the plaintiff had suffered an injury (a client not willing to enter into a contract with him), and the activity at issue was "at the heart of the business relationship" between the plaintiff and his clients, he had standing to assert the rights of third parties.

■ Aside from Officer Rivera's mooted cause of action, neither Mangual nor interveners have proffered any evidence of reasonably credible threats to indicate that journalists actually fear prosecution. The alleged chilling effect that Mangual or others may be suffering because of the statute's existence cannot be based on "subjective fear" of prosecution. *Meese*, 481 U.S. at 473, 107 S.Ct. 1862. Furthermore, as discussed earlier, the two recent criminal libel cases do not involve journalists exercising their First Amendment rights, and so cannot be used as a basis to find that journalists are chilled by the Puerto Rico criminal libel statute.

In sum, absent evidence of injury to third parties, or to parties before the court, Mangual and interveners do not meet the criteria for third party standing.[16]

16. Even if we were to assume that such a chilling effect is occurring, we must consider the possibility of a narrow saving construction of the statute that would avoid a constitutional question and safeguard Mangual's and interveners' rights. *National Pharmacies, Inc. v. Feliciano*, 221 F.3d 235, 242 (1st Cir. 2000). The defendant has suggested such a saving construction and there is no reason to

*CONCLUSION*

In light of the foregoing, the Court **GRANTS** defendant's motion to dismiss this action on grounds of standing, mootness and the unripe nature of all claims, (Docket 16) and **DENIES** OPC's, Betancourt's, Suarez's, Medina's and El Vocero's motions to intervene as plaintiffs. (Dockets 25 and 30). The Court simply lacks jurisdiction because it has been presented with no justiciable case or controversy under Article III of the Constitution. Judgment will be entered dismissing all claims.

**IT IS SO ORDERED.**

think that the Puerto Rico courts will not construe the statutes according to First Amendment principles as expounded by the Supreme Court. (Docket 10, Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion to Dismiss for Lack of Jurisdiction, pp. 5–10).